## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CLARENCE STRINGER | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 06-2098 (RBW) |
| | ) | |
| HENRY M. PAULSON, SECRETARY | ) | |
| OF TREASURY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS

The Department of the Treasury and federal defendants Henry M. Paulson (sued in his official capacity only), Larry Felix (sued in his official capacity only), and Brenda Veal-Munoz (sued in both her official and individual capacities) respectfully move to dismiss this complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(1), and 12(b)(6). In support of this motion, defendants respectfully refer the Court to the accompanying Memorandum of Points and Authorities and the attachments.

The *pro se* Plaintiff should take notice that to the extent that this motion is treated as one for summary judgment, any factual assertions contained in the attached Memorandum in Support of this Motion and supporting exhibits will be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions therein. See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992).

The *pro se* Plaintiff is also hereby advised that failure to respond to a dispositive motion may result in the district court granting the motion and dismissing the case. See Fox v.

Strickland, 837 F.3d 507, 509 (D.C. Cir. 1988).

A proposed Order consistent with the relief sought herein is attached.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CLARENCE STRINGER | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No: 06-2098 (RBW) |
| | ) | |
| HENRY M. PAULSON, SECRETARY | ) | |
| OF TREASURY, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

*Pro se* Plaintiff, an employee of the United States Department of the Treasury, Bureau of Engraving and Printing, alleges that he was denied "the benefit of process due him according to the Collective Bargaining Agreement (Contract) between the U.S. Department of the Treasury (Bureau) and Columbia Lodge 174." *Amended Compl. at* ¶1. Specifically, to the extent that Plaintiff's claims can be reasonably discerned, Plaintiff appears to base his complaint upon his dissatisfaction with the Agency's response to a grievance that he filed over one day of absence without leave (AWOL) that was issued to him in September, 2006. Plaintiff appears to be alleging that the Agency violated both the collective bargaining agreement and the due process clause of the Fourteenth Amendment when it did not dismiss the "AWOL [c]harge against the Plaintiff" during the collectively bargained grievance process. *Amended Compl. at* ¶23.

As discussed more fully below, Plaintiff failed to exhaust his administrative remedies and his complaint must therefore be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Morever, to the extent that Plaintiff is alleging a *Bivens* claim, such a claim

must also be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

Plaintiff is employed by the Department of the Treasury, Bureau of Engraving and Printing ("BEP" or "Bureau"), Accountability Systems & Compliance Division, as a Final Verifier. *Amended Compl. at ¶4.* On or around September 18, 2006, Plaintiff was charged with being absent without leave (AWOL) for his unauthorized absence from the office on September 15, 2006. *Amended Compl. at ¶9.*

Plaintiff grieved the one day AWOL charge through the grievance process set forth in the collective bargaining agreement ("CBA") between the Bureau of Engraving and Printing, Department of Treasury and Columbia Lodge No. 174 International Association of Machinist and Aerospace Workers AFL-CIO ("Lodge No. 174" or "Union"), the exclusive representative for bargaining unit employees such as the Plaintiff. *Amended Compl. at ¶¶ 11-22.* The CBA provides a three-step grievance procedure for resolving complaints and grievances. *Attachment 1.* Once the three-step grievance procedure has been exhausted, if the "grievant and/or the Union is not satisfied with the decision reached in Step III the grievant may, with the approval of the Union and within 30 calendar days thereafter, make a formal request to the Bureau Director that such unresolved grievance be submitted to impartial arbitration." *Id.* As indicated in the Plaintiff's amended complaint, Plaintiff appears to have only filed a step one and a step two grievance. *Amended Compl. at 13 and 18.* Also, neither the Plaintiff nor the Union ever sought to appeal the grievance to the arbitration process.

Instead, on or around December 11, 2006, Plaintiff filed a district court complaint against the Bureau and against Ms. Brenda Veal-Munoz in both her official and individual capacities.

2

*Docket Entry 1.* On February 7, 2007, Plaintiff then filed an amended complaint against the same parties. *Docket Entry 12.* In his amended complaint, Plaintiff alleges that the Bureau violated "the spirit and letter of the" CBA when it failed to dismiss his AWOL charge. *Docket Entry 12, ¶23.* Plaintiff also appears to allege that Mr. Felix and Ms. Veal-Munoz violated his constitutional Fourteenth Amendment due process rights by failing to dismiss his AWOL charge.[1] *Docket Entry 12, ¶23.a.*

As relief, Plaintiff seeks a temporary restraining order and injunction restraining the enforcement of Mr. Felix's November 22, 2006 order, a declaratory judgment that the November 22, 2006 order violates the United States Constitution, an award of costs, and any other relief deemed proper by the Court. *Amended Compl. at p. 6.*

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. Of Am, 511 U.S. 375, 377 (1994). To carry its burden of establishing jurisdiction, a plaintiff must "establish the Court's subject matter jurisdiction by a preponderance of the evidence." Asemani v. United States, 2005 WL 975635, *2 (D.D.C. Apr. 21, 2005); Malewicz v. City of Amsterdam,

---

[1] On or around March 12, 2007, Plaintiff apparently filed a second amended complaint. Plaintiff's second amended complaint appears to largely mirror his first amended complaint, except Plaintiff now raises for the first time a Fifth Amendment claim in his second amended complaint. However, it does not appear that Plaintiff sought leave of court to file this second amended complaint, as required by Fed. R. Civ. P. 15(a). As such, Defendant objects to Plaintiff's second amended complaint and submits this motion to dismiss in response to Plaintiff's first amended complaint.

362 F.Supp.2d 298, 305 (D.D.C. 2005).

Fed. R. Civ. P. 12(b)(1): "In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Thompson v. Capitol Police Board, 120 F. Supp. 2d 78, 81 (D.D.C. 2000) (citations omitted); see also Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). While a plaintiff is entitled to all favorable inferences that can be drawn from those allegations, Warth v. Seldin, 422 U.S. 490, 501 (1975), the court need not accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint. Kowal, 16 F.3d at 1276; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "The court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." Rann v. Chao, Dep't. of Labor, 154 F. Supp. 2d 61, 64 (D.D.C. 2001) (citations omitted), affirmed, 346 F.3d 192 (D.C. Cir. 2003), cert. denied, 125 S.Ct. 35 (2004); Taylor v. Federal Deposit Insurance Corp., 132 F.3d 753, 762 (D.C. Cir. 1997); National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996). In addition, "[o]n a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence." Thompson, 120 F. Supp. at 81.

## ARGUMENT

### I.    Plaintiff Failed to Exhaust His Administrative Remedies Under the Negotiated Grievance Process

The Civil Service Reform Act ("CSRA") governs the relationship between the federal

4

government and its employees, providing "a comprehensive system for reviewing personnel action taken against federal employees." USIA v. KRC, 989 F.2d 1211, 1217 (D.C. Cir. 1993) (quoting United States v. Fausto, 484 U.S. 439, 455 (1988)). The CSRA generally precludes district courts from taking jurisdiction over CSRA-related claims. Steadman v. Governor, United States Soldiers' & Airmen's Home, 918 F.2d 963, 967 (D.C. Cir. 1990) (citing Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263, 489 U.S. 527, 533 (1989) (Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector, including the authorization of collective bargaining; federal employees may not circumvent that structure even if their claim is based as well on the Constitution).

It is well established that a plaintiff is not entitled to judicial review until all administrative remedies have been exhausted. Haney v. Chesapeake & Ohio Railroad Company, 1973 U.S.Dist. LEXIS 15186; Lodge 1858, American Federation of Government Employees v. Paine, 436 F.2d 882, 896 (1970); see also F.C.C. v. Schreiber, 381 U.S. 279, 296-297 (1965); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41 (1938); Spanish International Broadcasting Co. v. FCC, 385 F.2d 615 (1967). The exhaustion doctrine is not limited merely to the initiation of prescribed administrative procedures. Rather, the plaintiff must pursue the administrative procedures to their appropriate conclusion and await their final outcome before seeking judicial intervention. Lodge 1858, American Federation of Government Employees at 896; Aircraft & Diesel Equip. Corp. v. Hirsch, 331 U.S. 752, 767 (1947).

The Supreme Court has concluded that "[t]he courts have jurisdiction to enforce collective bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private

5

settlement mechanisms without dealing with the merits of the dispute." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37 (1987). Only when resort to the administrative remedies and arbitration procedures under a union contract are futile may a party avoid the exhaustion requirement. See Glover v. St. Louis-San Francisco Ry. Co., 393 U.S. 324 (1969); Winters v. Local 639, Int'l Bhd. of Teamsters, 186 U.S. App. D.C. 315, 318 (1977); APWU v. USPS, 126 F. Supp. 2d 1, 4 (D.D.C. 2000) (citing Communications Workers v. AT&T, 40 F.3d 426, 432 (D.C. Cir. 1994)). Thus, an employee may be able to overcome the exhaustion defense and proceed in court by demonstrating either that the grievance procedures are unreasonable or that the union officials are hostile and the possibility of a fair hearing is negated. NLRB v. Industrial Union of Marine & Shipbuilding Workers, 391 U.S. 418 (1968); Clayton v. International Union, UAW, 451 U.S. 679 (1981).

If exhaustion is a statutory mandate, courts cannot carve out exceptions that are unsupported by the text. McCarthy v. Madigan, 503 U.S. 140, 144 (1992); Avocados Plus, inc. v. Veneman, 361 U.S. App. D.C. 519 (D.C. Cir. 2004). The statutory scheme of the Labor Management Relations Statute, 5 U.S.C. §7101, et.seq. assigns the Federal Labor Relations Authority (FLRA) exclusive jurisdiction to resolve union grievances. Specifically, 5 U.S.C. §7121(a) states that the union contract shall provide procedures for settling grievances and these procedures "shall be the exclusive administrative procedures for resolving grievances which fall within its coverage."

In the instant case, it is undisputed that the Plaintiff, pursuant to the CSRA and the Federal Service Labor-Management Relations Act ("FSLMRA"), elected to contest his one day AWOL charge under the administrative grievance and arbitration procedures provided by the

6

CBA. However, it is also undisputed that the Plaintiff failed to exhaust his administrative

remedies under this process. Accepting as true Plaintiff's own allegations, he indicates that he

filed grievances in accordance with steps one and two of the three-step grievance procedure.

*Amended Compl. at ¶¶ 13 and 18.* However, Plaintiff does not allege anywhere in his amended

complaint that he filed a step three grievance. Moreover, even assuming arguendo that he did file

a step three grievance, Plaintiff does not allege, and the record does not indicate, that either he or

the Union ever sought to appeal his grievance to the arbitration process.[2] Instead, it appears that

Plaintiff simply abandoned the administrative remedies in mid-stream and filed the instant

district court complaint, without any apparent reason or good cause. Having failed to properly

exhaust his administrative remedies, Plaintiff's complaint before this court lacks subject matter

jurisdiction.

---

[2] Pursuant to 5 U.S.C. §7122, either party may file exceptions to an arbitrator's award
with the FLRA. The exclusive judicial remedy is addressed in section 7123 of this statute.
Under this section, a grievant may **only** seek judicial review of an order by the FLRA. Since this
statute specifies when judicial review is the appropriate remedy, a grievant is precluded from
filing a complaint in court prior to a ruling by the FLRA. Judicial review of the FLRA's
determination is precluded unless an unfair labor practice is either explicit or a necessary ground
for a final order issued by the Authority. United States Marshals Service v. Federal Labor
Relations Authority, 708 F.2d 1417 (9th Cir. 1983) Thus, even if Plaintiff in the present case had
exhausted his administrative remedies by pursuing arbitration, he would still be barred from
appealing the issue to court. Courts have strictly adhered to the FLRA requirement that only
final orders of the FLRA are afforded judicial review. Turgeon v. Federal Labor Relations
Authority, 677 F.2d 937 (D.C. Cir. 1982) (refusal of General Counsel of FLRA to issue a
complaint was not a final order and, therefore, not judicially reviewable); See also Garcia v.
United States, 680 F.2d 29 (5th Cir. 1982).

## II.    Plaintiff's Fourteenth Amendment Claim Must Also Be Dismissed[3]

### A.    Plaintiff's "Constitutional" and Statutory Claims are Indistinct

When a constitutional claim is intertwined with a statutory one and Congress has

provided machinery for the resolution of the latter, a plaintiff must first pursue the administrative

machinery. Wallace v. Lynn, 507 F.2d 1186, 1189-90 (1974); see also Sampson v. Murray, 415

U.S. 61, 83, 89-92 (1974). When the statutory and constitutional claims are "premised on the

same facts" and the CSRA remedy would have been fully effective in remedying the

constitutional violation," exhaustion is mandated. Andrade v. Lauer, 729 F.2d 1475, 1493 (D.C.

Cir. 1984). Only in the unusual case where the constitutional claim raises issues totally unrelated

to the CSRA procedures can a party come directly to district court. Id. at 1492; see also

Steadman v. Governor, United States Soldiers' & Airmen's Home, 918 F.2d 963, 967 (D.C. Cir.

1990). Otherwise, an individual may not bring a constitutional claim arising out of the federal

employment relationship.

In the present case, Plaintiff's complaint centers entirely around his dissatisfaction with

the outcome of his grievance and management's refusal to rescind his one-day AWOL charge.

With regard to his Fourteenth Amendment claim, Plaintiff wholly fails to raise a claim that is

"totally unrelated" to or "completely divergent" from his grievance claims. See fn 3. Plaintiff

cites the very same facts as premises for both his statutory and constitutional claims and he could

have resolved these alleged violations through the appropriate administrative procedure, which

---

[3] As noted in fn 1, Plaintiff appears to raise a Fifth Amendment claim in his second amended complaint. Though Plaintiff failed to seek leave of court to file a second amended complaint, Defendant submits that the arguments under paragraph II of this motion to dismiss are equally applicable with regards to Plaintiff's Fifth Amendment claim.

included arbitration. *Amended Compl. at 9-23.*

Moreover, as discussed above, Plaintiff has yet to exhaust his administrative remedies related to the one day AWOL charge. For these reasons, Plaintiff's constitutional claim must also be dismissed for lack of subject matter jurisdiction.

**B.      Plaintiff Does Not State a Cognizable Fourteenth Amendment Claim**

To the extent that this Court addresses Plaintiff's Fourteenth Amendment claim separately, such a claim must also be dismissed. The Fourteenth Amendment reads as follows:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The Fourteenth Amendment refers to actions committed by the State. It is undisputed that the defendants in this case are a federal Agency and federal officials and Plaintiff does not allege that any constitutional deprivations were accomplished under color of state law. As such, Plaintiff's Fourteenth Amendment claim is inapplicable.

Even reading the complaint in a light most favorable to the Plaintiff, it is evident that Plaintiff has failed to demonstrate that any constitutional due process rights were denied to him. *See fn 3.* As such, Plaintiff has failed to state a cognizable Fourteenth Amendment claim.

**C.      Sovereign Immunity Bars Any Constitutional Claims Against The Bureau And The Individual Defendants In Their Official Capacities**

To the extent that Plaintiff is seeking any damages against the Bureau and any of the individual defendants in their official capacities for alleged constitutional violations, these claims must be dismissed absent a waiver of sovereign immunity. Meyer v. Reno, 911 F. Supp. 11 (D.D.C. 1996); Marshall v. Reno, 915 F. Supp. 426 (D.D.C. 1996); Deutsch v. U.S. Dept. of

9

Justice, 881 F. Supp. 49, 55 (D.D.C. 1995). The inherent sovereign immunity of the United

States protects it and its agencies [such as the Bureau] from suit absent express waiver. See

United States v. Nordic Village, 503 U.S. 30 (1992). Sovereign immunity also bars suits for

money damages against officials in their official capacities for nondiscretionary acts absent a

specific waiver by the government. Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir.

1984). Plaintiff's complaint does not contain any colorable basis for such a waiver. Therefore,

to the extent Plaintiff asserts claims for damages against the individual defendants in their

official capacities and the Bureau as an agency, such claims must be dismissed for lack of subject

matter jurisdiction.

**D.    Special Factors Counsel Hesitation In The Creation Of A <u>Bivens</u> Remedy In Light Of The Exclusive Statutory Remedies Available To Plaintiff**

The courts have recognized that special factors counseling against the creation of an

alternative Bivens-type remedy must be recognized where a comprehensive statutory scheme has

been established to provide relief in a given area. See Mittleman v. U.S. Treasury, 773 F. Supp.

452, 454 (D.D.C. 1991) (Privacy Act bars plaintiff's constitutional claims); Weiss v. International

Brotherhood of Electrical Workers, 729 F. Supp. 144, 147 (D.D.C. 1990) (to the extent that

plaintiff's emotional injuries were the result of the stressful work situation created by the

defendant, her claim of intentional infliction of emotional distress must be dismissed as

subsumed within Title VII) (and cases cited therein); Spagnola v. Mathis, 859 F.2d 223, 229-30

(D.C. Cir. 1988) (en banc) (recognizing the exclusivity of the Civil Service Reform Act's

remedies); see also Bush v. Lucas, 462 U.S. 367 (1983) (comprehensive procedural and

substantive provisions of the Civil Service Reform Act constitute "special factors" counseling

hesitation against a Bivens remedy); Schweiker v. Chilicky, 487 U.S. 412 (1988) (Social Security

10

Disability Benefits Reform Act of 1984); see also Brown v. GSA, 425 U.S. 820 (1976) (Title VII is the sole remedy for federal employees complaining of job discrimination on account of sex or race); Gleason v. Malcomb, 718 F.2d 1044, 1048 (11th Cir. 1983) (special factors counsel against a Bivens remedy where plaintiff could have sought equitable relief pursuant to the Administrative Procedure Act ("APA"))[4]; Dearsman v. Kurtz, 516 F. Supp. 1255, 1259-60 (D.D.C. 1981) (Civil Service Reform Act ("CSRA") and Title VII constituted exclusive remedies for adverse actions and discrimination in the federal workplace, precluding plaintiff's due process claims).

In the instant case, the comprehensive statutory scheme of the CSRA provides for the resolution of employee grievances such as the Plaintiff's dispute regarding his one day AWOL charge through the collectively bargained grievance and arbitration process. This process was available to and in fact elected by the Plaintiff. His grievance and arbitration remedies thus provide Plaintiff with his exclusive remedies in place of a Bivens claim.

It is not necessary that the statutory remedial scheme be capable of affording the plaintiff all of the relief he seeks in this action. The controlling factor is that Congress has created a comprehensive scheme. Spagnola v. Mathis, 859 F.2d at 228-30; see Bush v. Lucas, 462 U.S. at 388-90. Thus, special factors counsel against the creation of a Bivens remedy here. Accordingly, Plaintiff's claims against the individual defendants should be dismissed.

### E.    Defendants Are Entitled To Qualified Immunity

Plaintiff's Fourteenth Amendment claim should also be dismissed because the individual

---

[4] See also Sloan v. HUD, 231 F. 3d 10, 12 (D.C. Cir. 2002) (recognizing the district court's dismissal of Bivens claims based on APA special factors analysis, but affirming on other grounds).

defendants are entitled to qualified immunity. *See fn 3.* Qualified immunity shields government

officials from suit in performance of a discretionary function unless that official's conduct

violated a clearly established constitutional or statutory right of which a reasonable person would

have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is "an

entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472

U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to

liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to

go to trial." *Id.* The D.C. Circuit, in Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998),

explained:

> In short, "[a]n official is ... entitled to summary judgment [on qualified immunity
> grounds] unless '[t]he contours of the right [were] sufficiently clear that a reasonable
> official would [have] underst[ood] that what he [was] doing violate [d] that right.' "
> Harris v. District of Columbia, 932 F.2d 10, 13 (D.C. Cir. 1991) (quoting Anderson v.
> Creighton, 483 U.S. 635, 640 (1987), aff'd 922 F.2d 443 (8th Cir. 1990)).

By "provid[ing] government officials with the ability reasonably to anticipate when their conduct

may give rise to liability for damages," Anderson, 483 U.S. at 646, the doctrine of qualified

immunity strikes a balance between compensating those injured by official conduct and

protecting the Government's basic ability to function. See Harlow, 457 U.S. at 813-14. In other

words, qualified immunity is designed to mitigate the social costs of exposing government

officials to personal liability--costs such as "distraction of officials from their governmental

duties, inhibition of discretionary action, and deterrence of able people from public service." *Id.*

at 816; see also Harris, 932 F.2d at 13. To this end, qualified immunity provides not simply a

defense to liability, but also "an entitlement not to stand trial or face the other burdens of

litigation, conditioned on the resolution of the essentially legal question whether the conduct of

which the plaintiff complains violated clearly established law." <u>Mitchell v. Forsyth</u>, 472 U.S.

511, 526 (1985). Where an official's conduct is objectively reasonable in light of existing law,

that official will enjoy protection from liability. <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 639

(1987).

In the instant case, Plaintiff alleges only that Ms. Veal-Munoz violated his constitutional

right by "not dismissing Supervisor Mary Smith's September 18, 2006 AWOL [c]harge against

the Plaintiff."[5] *Amended Compl. at ¶¶ 20 and 23.* In her grievance response to the Plaintiff, Ms.

Veal-Munoz explained why he was charged with AWOL:

> ... you were not charged with AWOL because you failed to follow the appropriate
> procedures for requesting leave. Rather, you were charged AWOL because you refused,
> as directed, to submit appropriate medical documentation substantiating your absence.
> Moreover, you were provided with several opportunities to provide such documentation
> and failed to do so.
>
> In this regard, the contract does not place any limits on the Bureau's authority to request
> documentation in order to substantiate an employee's request for sick leave. Pursuant to
> 5 C.F.R. 630.403 the Bureau is allowed to request such medical documentation when the
> Bureau believes it to be administratively necessary. Accordingly, you were required to
> provide such documentation when instructed [to] do so. Because you failed to comply
> with that instruction, you were properly charged AWOL.
>
> *Attachment 2.*

Though Plaintiff may have found Ms. Veal-Munoz's response dissatisfactory, he fails to explain

how her actions "violated clearly established law." <u>Forsyth</u> at 526. Accordingly, Ms. Veal-

Munoz is entitled to qualified immunity and should be dismissed from this lawsuit.

## CONCLUSION

---

[5]Although the complaint is far from clear, to the extent that Plaintiff is attempting to sue
Ms. Veal-Munoz or any of the defendants based on their rulings on his efforts to exhaust his
administrative remedies, they would be protected by absolute immunity. <u>E.g.</u>, <u>Butz v.</u>
<u>Economou</u>, 438 U.S. 478, 515-16 (1978).

13

For all of the foregoing reasons, this complaint should be dismissed.

Respectfully submitted,

_J. A. Taylor (by RC)_

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

QUAN K. LUONG
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E-4417
Washington, D.C. 20530
(202) 514-9150 (telephone)
(202) 514-8780 (facsimile)

14

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 21st day of March, 2007, I caused service of the foregoing **DEFENDANTS' MOTION TO DISMISS** to be made on the *pro se* plaintiff via first class mail:

<div style="margin-left:2em">
Clarence Stringer<br>
2501 2nd Street, N.E.<br>
Washington D.C.  20002
</div>

<div style="margin-left:4em">
Respectfully submitted,

QUAN K. LUONG<br>
Special Assistant United States Attorney<br>
555 Fourth Street, N.W., Room E-4417<br>
Washington, D.C. 20530<br>
(202) 514-9150 (telephone)<br>
(202) 514-8780 (facsimile)
</div>

# LABOR-MANAGEMENT AGREEMENT

Between the

BUREAU OF ENGRAVING AND PRINTING
DEPARTMENT OF THE TREASURY

and

COLUMBIA LODGE NO. 174
INTERNATIONAL ASSOCIATION OF
MACHINIST AND AEROSPACE WORKERS
AFL-CIO

NON-CRAFT UNIT

*Effective*
*July 18, 1989*



# ARTICLE 31
## GRIEVANCE PROCEDURE

**Section 1** The Employer and the Union desire that all employees in the Unit be treated fairly and equitably. It is intended that this grievance procedure will provide a means of resolving complaints and grievances at the lowest level possible, and the Employer and the Union agree to work toward this end. This procedure is the exclusive procedure available for settlement of all grievances, including questions of arbitrability and suspension of 14 days or less, except for the following:

(1) Any claimed violation of matter relating to prohibited political activities.

(2) Retirement, life insurance, or health insurance.

(3) National Security matters.

(4) Any examination, certification or appointment.

(5) Classification of any position which does not result in the reduction in grade or pay of an employee.

(6) Reduction in Force

(7) Any employee grieving a matter of discrimination, unacceptable performance, adverse actions and similar matters may choose to process the grievance under this procedure, or statutory/established appellate procedures, but not under both.

**Section 2** An employee or group of employees may present their own grievance and have it adjusted without the intervention of the exclusive representative,

provided an exclusive representative has been given an opportunity to be present during the grievance proceeding, such adjustment is not inconsistent with the Agreement and the final decision is forwarded to the Union at the same time it is forwarded to the employee or group of employees. An adjustment may be offered at any step below step 3 of the grievance procedure. Should and employee elect to submit a grievance under this procedure without Union representation, he/she will not be entitled to any other representative.

**Section 3** (a) The Employer recognizes and endorses the importance of bringing to light and adjusting grievances promptly.

(b) In the exercise of this right, employees, Union Representatives, and witnesses shall be free from any and all restraint, interference, coercion, discrimination, or reprisal.

(c) Grieving employees will have the right to be accompanied, represented, or advised by the Union at any stage of the proceeding.

(d) The term "designated Union Representative" as used in this Article shall mean any one of the following Union Representatives:

1. President;
2. Vice President;
3. Shop Stewards;
4. International Officers of IAM/AW.

(e) No more than one designated Union Representative will be granted official time to process the

02/13/2007 15:15 FAX 2028742951   CHIEF COUNSEL   Ø016

grievance at Steps one and two of this procedure. The Chief Shop Steward will also be granted official time at Step two or succeeding steps.

(f) The term "First Line Supervisor" means a Foreman or Assistant Foreman.

(g) The term "Second Line Supervisor" means the Division Superintendent or Assistant Division Superintendent.

(h) The term "Third Line Supervisor" means the appropriate Officer Chief or Assistant Office Chief.

**Section 4** This procedure will be the only procedure available for the processing and final disposition of grievances relating to the terms of this agreement or any grievable matter. The aggrieved will be bound by the Union's decision to accept settlement at any step of these procedures. If the Union is the aggrieved's chosen the Union's decision to accept settlement at any step of these procedures. If the Union is the aggrieved's chosen representative. Only the Union may invoke arbitration.

**Section 5** It is agreed that a grievance under this Article will be initiated within fifteen (15) days of the incident or knowledge of the incident which caused the grievance. Any grievance failing to comply with these time limits shall not be presented or considered at a later date.

**Section 6**
*Step I.* The grievance shall first be discussed by the employee concerned, one designated Shop Steward

52

(if any), and the appropriate First Line Supervisor in an attempt to settle the matter informally. If no immediate settlement is made, the Supervisor must give his/her answer or decision within two working days of the meeting.

*Step II.* If the grievance is not settled as a result of Step I, the aggrieved shall, within two working days, request a meeting with the appropriate Second Line Supervisor. The supervisor shall meet with the aggrieved (if any), and the Chief Shop Steward (if necessary), within three working days after the date on which the meeting was requested. At this step, every effort shall be made to resolve the complaint by informal discussion. If no immediate settlement is made, the Supervisor must give his/her answer or decision within three working days after the meeting.

*Step III.* If the aggrieved is not satisfied with the answer received as a result of Step II, the aggrieved shall reduce the grievance to writing and submit it to the appropriate Third Line Supervisor within seven working days. In submitting the grievance in writing, the employee must identify:

(a) The nature of the grievance;

(b) The specific provision(s) of the Agreement that was violated;

(c) The remedy desired;

(d) One Union Representative (if any).

The supervisor will meet with the aggrieved and one

53

designated Union Representative (if any), and the Chief Shop Steward (if necessary), within three working days after the date on which the meeting was requested. The supervisor must have his/her answer or decision within 14 calendar days of the meeting.

**Section 7** If the grievant and/or the Union is not satisfied with the decision reached in Step III the grievant may, with the approval of the Union and within 30 calendar days thereafter, make a formal written request to the Bureau Director that such unresolved grievance be submitted to impartial arbitration. If, at this time, the Bureau Director reaches a decision acceptable to the Union, the matter is ended.

**Section 8** (a) At each and every step of the grievance procedure including arbitration, the Union shall be permitted to call a reasonable number of employee witnesses who have a knowledge of the circumstances and factors bearing of the case. Such employee witnesses shall suffer no loss of pay for so serving.

(b) The meeting referred to in Step 2 of the procedure will be held on the regular day shifts. All employees not regularly on the day shift when required to be present shall be changed to the day shift for this purpose.

(c) The Employer when requested will produce any permissible records, the disclosure of which is not prohibited by law, rules, or regulations and are not of a privileged nature, and are pertinent to the grievance.

(d) New Issues may not be raised by either party unless they have been raised at the first step of the

grievance procedure, provided, however, the parties may mutually agree to join new issues to the grievance in process.

**Section 9** (a) Working days mean non-premium, non-overtime days for Unit employees.

(b) Time limits delineated in this Article may be extended by mutual consent.

(c) The parties may mutually agree to waive any item of this procedure.

**Section 10** For a situation when two (2) or more employees have a grievance which may be reasonably construed as identical, and the employee and the Union representative mutually agree by management and the Union, similar grievances may be combined and presented in the interest of saving time and resources of both parties.

**Section 11** If the basis for a grievance is an action or decision of an official of the Employer above the shop level, the grievance will be reduced to writing and shall begin at the management level which has taken the action or has made the decision.

**Section 12** It is the intent of the parties to this Agreement that any dispute, subject to this grievance procedure, shall be fully discussed at each step of the procedure, with the view in mind of effecting an equitable settlement. In this regard, every effort will be made to arrange and conduct grievance meetings in an atmosphere free from hostility and personal attack. Such meetings shall, by mutual agreement, provide for the presence of representatives from both parties with

direct knowledge of the issues involved, the presence of the accused and the accuser as the situation dictates and questioning of witnesses.

**Section 13** Failure of the Employer to meet the time limits prescribed above shall permit the employee or the Union to move the grievance to the next step of the procedure. Failure of the employee or the Union to meet the time limits prescribed above shall constitute withdrawal and termination of the grievance.

## ARTICLE 32

## ARBITRATION

**Section 1** If the Employer and the Union fail to settle any grievance processed under the Negotiated Grievance Procedure, such grievance, upon written notice by either party within thirty (30) days after issuance of the final decision, shall be submitted to arbitration.

**Section 2** Within fifteen (15) working days from the date of the notice for arbitration, the parties shall jointly or individually request the Federal Mediation and Conciliation Service to provide a list of five (5) impartial persons qualified to act as arbitrators. The parties shall meet within ten (10) working days after receipt of such list. If they cannot mutually agree upon one of the listed arbitrators, the Employer and the Union will each strike one arbitrator's name from the list of five and will then repeat this procedure. The remaining person shall be the duly selected arbitrator. In all cases, a coin will be flipped to determine which party will begin the striking procedure.

56

**Section 3** (a) The arbitration hearing will be held during the regular day shift hours of the normal basic work-week, on the Employer's premises when practical, or at any site mutually agreed upon.

(b) A verbatim transcript will be made if the parties mutually agree or either party may request a verbatim transcript assuming the full cost for this service. If the other party upon consideration then requests a tran-script that party will pay for one third of the cost of recording and transcript.

(c) The arbitrator's fee shall be borne equally by Em-ployer and the Union and shall be limited to twice the fee that the Employer is authorized to pay. All other expenses incident to the arbitration proceedings and the expense of any mutually agreed upon services or site considered desirable or necessary in connection with the arbitration proceedings shall also be borne equally by the Employer and the Union.

(d) The aggrieved, the Chief Steward, the Union President of the Vice President, and all employees called as witnesses will be excused from duty to the extent necessary to participate in the proceedings without loss of pay or charges to annual leave. All em-ployees not regularly on the day shift, when required to be present, shall be changed to the day shift for this purpose.

(e) The arbitrator's decision will be final and binding, and the arbitrator will have the authority to make an aggrieved employee whole to the extent that such remedy is not limited by statute. However, this does not preclude the Bureau's right to appeal.

57

(f) It will be within the sole discretion of the arbitrator to determine who may testify.

**Section 4** The arbitrator will be requested to render his/her decision as quickly as possible, but in any event not later than thirty (30) days after the conclusion of the hearing unless the parties mutually agree to extend the time limit.

**Section 5** The arbitrator's award shall be binding on the parties. However, either party may file exceptions to an award with the Federal Labor Relations Authority.

**Section 6** If either party decides to take exception to the arbitrator's award, or to seek advice or guidance from higher authority on the implementation of the award, they will so notify the other party within ten (10) working days of receipt of the award.

**Section 7** The arbitrator will have no authority to add to, subtract from, amend, or modify any provision of this Agreement or impose on either Employer or the Union any limitation or obligation not specifically provided for under the written terms of this Agreement, and all written amendments agreed to by the parties.

**Section 8** Awards by arbitrators involving back pay or other monetary awards shall be limited by applicable laws and regulations.

## ARTICLE 33
## DUES WITHHOLDING

**Section 1** The Employer and the Union agree that nothing in this Agreement shall require an employee

58

to become or to remain a member of a labor organization, or to pay money to the organization except pursuant to a voluntary, written authorization by a member for the payment of dues through payroll deductions.

**Section 2** This Article is for the purpose of permitting employees who are members of the Union to pay dues through the authorization of voluntary allotments from their compensation and covers all eligible employees:

1. Who are represented under this recognition;

2. Who are members in good standing of the Union;

3. Who voluntarily complete appropriate allotment (SF-1187); and

4. Who receive compensation sufficient to cover the total amount of the allotment.

**Section 3** The Union agrees to assume the responsibilities for:

(a) Informing and educating its members on the voluntary nature of the system for the allotment of Union dues, including the conditions under which the allotment may be revoked.

(b) Purchasing and distributing to its members SF-1187;

(c) Notifying the Office of Industrial Relations in writing of:

1. The names and titles of officials authorized to make the necessary certifications of SF-1187 in accordance with this Article;

59



# DEPARTMENT OF THE TREASURY
## BUREAU OF ENGRAVING AND PRINTING
### WASHINGTON, D.C. 20228

*Presented to*
*Mr Stringer*
*on 10/25/06*
*at 11:15 am*

**OCT 2 5 2006**

MEMORANDUM FOR   CLARENCE STRINGER, FINAL VERIFIER
                 OFFICE OF COMPLIANCE

FROM:            Brenda K. Veal-Munoz, Acting Chief *Brenda K. Veal-Munoz*
                 Office of Compliance

SUBJECT:         AWOL

This is in regards to the Absent Without Leave (AWOL) Charge Notice issued to you for
August 15, 2006. You filed an appeal with me on October 18, 2006. In your appeal,
you contend that you followed the procedures for requesting leave set forth in the
contract between the Bureau and Lodge 174, International Machinists & Aerospace
Workers, and are therefore entitled to leave.

As you contend, Article 11 of the contract sets forth the procedures for requesting sick
leave in an emergency situation. In this case, however, you were not charged AWOL
because you failed to follow the appropriate procedures for requesting leave. Rather,
you were charged AWOL because you refused, as directed, to submit appropriate
medical documentation substantiating your absence. Moreover, you were provided with
several opportunities to provide such documentation and failed to do so.

In this regard, the contract does not place any limits on the Bureau's authority to
request documentation in order to substantiate an employee's request for sick leave.
Pursuant to 5 C.F.R. 630.403 the Bureau is allowed to request such medical
documentation when the Bureau believes it to be administratively necessary.
Accordingly, you were required to provide such documentation when instructed do so.
Because you failed to comply with that instruction, you were properly charged AWOL.



**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
CLARENCE STRINGER                       )
                                        )
            Plaintiff,                  )
        v.                              )        Case No: 06-2098 (RBW)
                                        )
HENRY M. PAULSON, SECRETARY             )
OF TREASURY, et al.                     )
                                        )
            Defendants.                 )
_____)

## **ORDER**

    Upon consideration of Defendants' Motion to Dismiss, the relevant law, and the entire

record herein, it is this _____ day of _____, 2007

    ORDERED that Defendants' Motion to Dismiss is GRANTED, and it is

    Further ORDERED that this case is DISMISSED WITH PREJUDICE.

    This is a final appealable order.

    SO ORDERED.


_____
UNITED STATES DISTRICT COURT JUDGE